**[J-29A-C-2015]**
**[MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| DENTAL BENEFIT PROVIDERS, INC. AND UNITEDHEALTHCARE OF PENNSYLVANIA, INC. D/B/A UNITEDHEALTHCARE COMMUNITY PLAN AND HEALTHAMERICA PENNSYLVANIA, INC., D/B/A COVENTRYCARES, | No. 48 EAP 2014 Appeal from the Order of the Commonwealth Court entered 02/19/2014 at No. 945 CD 2013 reversing the determination entered on 05/07/2013 of the Office of Open Records at No. AP2012-2017. |
| Appellees | ARGUED: May 5, 2015 |
| v. | |
| JAMES EISEMAN, JR. AND THE PUBLIC INTEREST LAW CENTER OF PHILADELPHIA, | |
| Appellants | |
| AETNA BETTER HEALTH INC., HEALTH PARTNERS OF PHILADELPHIA, INC., KEYSTONE MERCY HEALTH PLAN, AND DENTAQUEST, LLC, | No. 49 EAP 2014 Appeal from the Order of the Commonwealth Court entered 02/19/2014 at No. 957 CD 2013 reversing the determination entered on 05/07/2013 of the Office of Open Records at No. AP2012-2017. |
| Appellees | ARGUED: May 5, 2015 |
| v. | |
| JAMES EISEMAN, JR., AND THE PUBLIC INTEREST LAW CENTER OF PHILADELPHIA, | |

|                                          |   |                                           |
|------------------------------------------|---|-------------------------------------------|
|                                          | : |                                           |
| Appellants                               | : |                                           |
|                                          | : |                                           |
| DEPARTMENT OF PUBLIC WELFARE,            | : | No. 50 EAP 2014                           |
|                                          | : |                                           |
| Appellee                                 | : | Appeal from the Order of the              |
|                                          | : | Commonwealth Court entered                |
|                                          | : | 02/19/2014 at No. 958 CD 2013             |
| v.                                       | : | reversing the determination entered on    |
|                                          | : | 05/07/2013 of the Office of Open          |
|                                          | : | Records at No. AP2012-2017.               |
| JAMES EISEMAN, JR., AND THE PUBLIC       | : |                                           |
| INTEREST LAW CENTER OF                   | : | ARGUED:  May 5, 2015                      |
| PHILADELPHIA,                            | : |                                           |
|                                          | : |                                           |
| Appellants                               | : |                                           |

## DISSENTING OPINION

**MR. JUSTICE STEVENS**                **DECIDED:  October 27, 2015**

The public has the statutory right of access to the rates of payments made by Subcontractors to providers of dental health services to Medicaid enrollees in the HealthChoices Southeastern Zone (the "Provider Rates").  Thus, as I find that the Provider Rates should be disclosed and would reverse the Commonwealth Court, I respectfully dissent.

The Majority holds that the "highly generalized principles" established under 65 P.S. § 67.506(d)(1) that are applicable to records in the possession of third parties does not compel disclosure of the Provider Rates.  More specifically, the Majority concludes Section 506(d)(1) contemplates an actual contract with a third party in possession of salient records, and finding no such actual contract exists between the Subcontractor, who has physical possession of the agreements evidencing the Provider Rates, and

DPW, the Commonwealth agency at issue, the Majority affirms the Commonwealth Court's decision upon this basis.

In my view, the Majority has interpreted Section 506(d)(1) of the Right-to-Know Law ("RTKL") too narrowly and has not given the RTKL the liberal construction necessary "to effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." Levy v. Senate of Pennsylvania, 619 Pa. 586, 619, 65 A.3d 361, 381 (2013) (quotation and quotation marks omitted). As this Court has recognized, the objective of the RTKL is "to empower citizens by affording them access to information concerning the activities of their government." SWB Yankees LLC v. Wintermantel, 615 Pa. 640, 662, 45 A.3d 1029, 1042 (2012).

Accordingly, as to this issue, I am more inclined to accept the dissenting view of Commonwealth Court Judge McCullough, who relevantly stated that:

> In this case, DPW is the party principal to the subcontracts between the [Managed Care Organization ("MCO")] and the third party Subcontractors. The MCOs lack authority to enter into subcontracts with the Subcontractors, and the only way in which the subcontracts can become valid and enforceable under the HealthChoices Agreement is if DPW ratifies or approves the subcontracts as the principal. Therefore, because the Subcontractors have directly contracted with DPW as principal and are in possession of the Provider Agreements ("in possession of a party with whom the agency has contracted"), . . . DPW possesses "public records" for purposes of [S]ection 506(d)(1) of the RTKL.
> Moreover, as used in the RTKL, the term "governmental function" is materially ambiguous; yet, it should be construed generally "to connote an act of delegation of some substantial facet of the agency's role and responsibilities." [SWB Yankees LLC, 615 Pa. at 664,] 45 A.3d [at 1043]. So long as the requested documents directly relate to the governmental function that is contracted out to the third party, the records are considered to be in the agency's possession under the RTKL. 65 P.S. § 67.506(d)(1).

In this case, the request for Provider Agreements and Provider Rates falls squarely within the terms of the Subcontractors' contractual duties and explicit governmental undertakings. Via sub-contractual arrangements, the Subcontractors assume DPW's governmental obligation to implement Medicaid and ensure that dental care is available for Medicaid recipients. Pursuant to their governmental and contractual duties, the Subcontractors are not only obligated to secure dental services through Provider Agreements, but are also required to negotiate Provider Rates with the dental providers. On these facts, . . . the Provider Agreements and Provider Rates directly relate to the Subcontractors' performance of a government function. These agreements and rates are indispensably necessary to effectuate Medicaid and represent the ["]very thing["] the Subcontractors contractually agreed to do for and on behalf of DPW.

Dental Benefit Providers, Inc. v. Eiseman, 86 A.3d 932, 944-45 (Pa. Cmwlth. 2014) (en banc) (McCullough, J., dissenting).

In addition to affirming the Commonwealth Court's order on the point that Section 506(d)(1) contemplates an actual contract with a third party in possession of salient records, which is lacking in this case, the Majority further discounts the policy considerations favoring public access to downstream Provider Rates. As Appellants' amicus curiae indicates, the lack of access to the negotiated Provider Rates prevents a full understanding of the relationship between fees and access, which is critical to addressing disparities in health care cost, quality, and outcomes. Brief of Amicus Curiae Professor Daniel Polsky, Ph.D. at 5. Moreover, lack of information concerning the Provider Rates prevents fully informed policy decisions regarding the state of Medicaid spending and impedes necessary analysis required to improve the functioning of the health care system. See id. at 6, 8. Furthermore, transparency in the government's oversight of Medicaid is necessary toward the interrelated objective of improving healthcare quality. Id. at 9.

Respectfully, the Majority's decision today prevents the public from holding government agencies accountable and does not require disclosure of information merely because a "middleman" is involved in the performance of the governmental duties. This is contrary to the remedial legislative intent of the RTKL. Accordingly, as I would require disclosure of the Provider Rates under Section 506(d)(1) of the RTKL, I dissent.